NARRAGANSETT MOTORS, Inc. v. PACKARD MOTOR CAR CO.

No. 4579.

United States Court of Appeals
First Circuit.

Dec. 31, 1951.

546

David Pokross, Boston, Mass. (William B. Trafford and Peabody, Brown, Rowley & Storey, all of Boston, Mass., on brief), for appellant.

R. Ammi Cutter, Boston, Mass. (Robert G. Dodge, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment for the defendant in an action for breach of contract. Narragansett Motors, Inc., the plaintiff-appellant, is a Rhode Island corporation which at one time was an authorized Packard dealer in East Providence, Rhode Island. Packard Motor Car Company is a Michigan corporation engaged in the business of manufacturing automobiles. Clearly more than $3,000 exclusive of interest and costs is involved in this litigation and federal jurisdiction is therefore established.

The gravamen of the complaint is the alleged failure of the defendant to supply the plaintiff during the period from January 1947 through March 1948, a period of intense new car shortage, with as many new automobiles as the plaintiff contends it was entitled to receive under its contract with the defendant. The court below, after trial without a jury, found as a fact that the plaintiff had received all it was entitled to under its contract with Packard Motor Car Company and accordingly entered the judgment dismissing the plaintiff's complaint from which this appeal is taken.

The court below found, and it is not disputed, that the parties executed a "Packard Dealer's Sales Agreement", so called, dated April 1, 1947, to run for a year, wherein it was agreed that Packard as "Seller" would sell to Narragansett as "Dealer," and "Dealer" would buy from "Seller," such new Packard automobiles "as are specified in purchase orders executed by Dealer and accepted by Seller from time to time." The plaintiff does not claim breach of this obligation, i. e. that the defendant failed to deliver cars which had been ordered and the orders for which had been accepted.

The plaintiff's claim is that during the shortage Packard established a quota system for the fair and equitable allocation among its dealers of such cars as were available; that Packard entered into agreements with its dealers, including the plaintiff, collateral to the Dealer's Sales Agreement whereby it legally obligated itself to sell and deliver to them their pro rata share of the cars available in the Boston Zone, which included Rhode Island, and that Packard in breach of this collateral obligation failed to sell and deliver to the plaintiff its fair share of available cars.

To establish its contention at the trial, the plaintiff, in addition to the Packard Dealer's Sales Agreement, relied upon an undated document entitled "Dealer Qualification Report and Check Sheet", executed by the parties and said to reflect conditions as of March 24, 1947, wherein among many items of information with respect to the plaintiff's personnel, physical plant, and financial worth, its quota is stated as 100, and it also relied upon oral representations said to have been made to its officers by the defendant's Boston Zone manager. The court below found that the check sheet was in fact executed before the sales agreement as a step preliminary thereto; that it was not on its face a contract or any part of one, but was instead merely a factual report covering the plaintiff's qualifications to act as a Packard dealer, and that the parties had signed it only for the purpose of verifying the facts stated therein. And furthermore the court found that the actual contract, the Dealer's Sales Agreement, did not incorporate the check sheet by reference, but on the contrary excluded it, for the sales agreement by its very terms superseded and annulled all previous agreements between the parties. Then the court found that although the defendant's Boston Zone manager had no doubt made a good many statements to the plaintiff's principal officers that he would do all he could to get more cars for the plaintiff, his statements were preceded by a clear caution that he could give no guarantee of any kind, so that his statements would not mean a firm commitment to a reasonable business man in the automobile trade at the time and under the circumstances then prevailing.

Moreover in conclusion the court said that this was not a case where fine print and nice language in a contract could prove a trap for the unwary; that the "terms of the contract clearly negate any guarantee of quota"; that the evidence was not convincing that the defendant's Boston Zone manager "even if he had the authority, which has not been shown, ever told the plaintiff that it would get anything more than its share of the cars shipped into this district", and moreover that the plaintiff on its own evidence had in fact received all the cars to which it was entitled under Packard's quota system. Therefore it concluded and ruled that there had been no breach of contract by the defendant.

We could state the case in far greater detail, and we could also state and analyze the plaintiff-appellant's elaborate argument item by item and particular by particular. No useful purpose would be served, however, should we do so. It will suffice to say that a careful study of the record discloses ample evidence to support the findings of fact made by the court below, and that we can discern no error in the conclusions of law reached by that court.

The judgment of the District Court is affirmed.